(No. 2097—)

WILLIAM HOPKINS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed July 7, 1936.*

CLARENCE T. SMITH, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

Mr. Justice Linscott delivered the opinion of the court:

The claimant, William Hopkins, filed his claim in great detail in this court on March 28, 1933. In brief, the claim for compensation alleges that he was duly appointed a member of the State Highway Maintenance Police on the 3rd day of October, 1929, and faithfully performed all the duties of his office up to the time of his injury, which was on the 11th day of July, 1930, when he was acting pursuant to instructions of his superior officer in removing a motorcycle from Springfield, Illinois, where it had undergone repairs, to the Village of Clay City, Illinois; that he was in company with another officer; that while enroute from Springfield to Clay City, and between the cities of Effingham and Flora and near a small Village known as Hord, they stopped for the purpose of obtaining a drink of water, and the claimant while endeavoring to start his motorcycle again to complete his journey, and while in the exercise of due care and caution, the claimant fell with the motorcycle, and fell beneath it and as a result thereof, the claimant received a permanent injury to his left knee, as well as other injuries.

It is stipulated that the claimant suffered a permanent disability to the extent of thirty-five per cent (35%) loss of the use of the left limb. It is averred and stipulated that the State had due notice of the injury, and the extent of the injury is not questioned by the Attorney General.

The claimant received the sum of One Hundred Seventy-five Dollars ($175.00) per month during the time of his total disability, and all doctor, hospital and medical bills were paid by the State of Illinois, but no settlement was made with the claimant for the permanent injury sustained.

It appears in the stipulation that claimant was the father of one child, who was dependent upon him, but it does not appear that he had a wife who was living at the time of the injury.

It also appears in the stipulation, that he was unable to continue in that line of employment. His salary apparently was paid to him from the time of the injury, July 11, 1930, up until December 1, 1930 when he was again replaced in the service, but was unable to continue the work.

On November 2, 1930, he wrote Mr. Walter L. Moody, Superintendent of State Highway Maintenance Police. In

this letter he described how the accident occurred; his injuries; stated that his knee was showing improvement in strength and movement and that he hoped to be able to perform his duties soon, and he also enclosed bills that he incurred on account of the accident. On November 24th of the same year, he wrote and stated that he had a broken knee cap and a badly sprained left arm. In neither letter, did he make any claim for compensation. On April 10, 1933, he wrote Mr. L. M. Taylor, Superintendent of State Police, describing his physical condition, and quoted F. J. Webber concerning X-ray pictures that had been taken, but did not make a claim for compensation.

Section 6 of the Court of Claims Act provides that this court must hear and determine the liability of the State for accidental injuries or death suffered in the course of employment by any employee of the State, such determination to be made in accordance with the rules prescribed in the Act commonly called the ''Workmen's Compensation Act.'' In a brief filed by the Attorney General, our attention is directed to Section 24 of the Workmen's Compensation Act, which provides that no proceedings for compensation under this Act shall be maintained unless claim for compensation has been made within six months after the accident, provided that in any case, unless application for compensation is filed with the Industrial Commission within one year after the date of the injury or within one year after the date of the last payment of compensation the right to file such application shall be barred.

The sole issue presented is: Whether a claim for compensation was made in conformity with the provisions of the Workmen's Compensation Act.

It has been repeatedly held that the making of a claim for compensation within the prescribed period is jurisdictional and a condition precedent to the right to maintain a proceeding under the statute. (See *American Car and Foundry Co.* vs. *Industrial Com.*, 335 Ill. 322; *City of Rochelle* vs. *Industrial Com.*, 332 Ill. 386; *Inland Rubber Co.* vs. *Industrial Com.*, 309 Ill. 43, and there are many other cases to the same effect.) No special form of claim for compensation is prescribed and the claim need not be in writing, but it must apprise the employer that the employee has sustained in-

juries of such a character as to entitle him to compensation and that a claim therefor will be made.

There is no evidence in the record that the employer was apprised of any claim for compensation prior to the filing of the application for its adjustment on March 28, 1933.

Would the fact that the State had paid claimant's wages up until December 1, 1930, be a waiver on the part of the State that a claim for compensation was not made? And can it be said that the State lulled the claimant into the belief that he would be paid compensation by reason of the fact that the State paid all hospital and medical bills and paid his wages for a period of six months? We feel that the Supreme Court has decided this case in the negative. (See *Lewis* vs. *Industrial Com.*, 357 Ill. 309.)

We must, therefore, hold that we have no jurisdiction in this case, and must deny the claim.